UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DR. JANE GRAYSON WIGGINTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. |
| VS. | ) | |
| | ) | 3:10-CV-2128-G |
| THE BANK OF NEW YORK MELLON | ) | |
| f/k/a THE BANK OF NEW YORK, | ) | |
| ET AL., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the court is the motion of the defendants, Bank of New York Mellon

Corporation ("Mellon"), BAC Home Loans Servicing, LP ("BAC"), and Mortgage

Electronic Registration Systems, Inc. ("MERS") (collectively, "the defendants") to

dismiss the petition filed by the plaintiff, Dr. Jane Grayson Wigginton

("Wigginton"), for failure to state a claim or, in the alternative, for a more definite

statement (docket entry 3). For the reasons set forth below, the defendants' motion

to dismiss is granted and their motion for a more definite statement is denied as

moot.

## I. BACKGROUND

Believing that the defendants wrongfully initiated foreclosure on her home, Wigginton sued Mellon, BAC, and MERS for breach of contract, anticipatory breach of contract, violation of the Texas Debt Collection Practices Act ("TDCA") and the Texas Deceptive Trade Practices Act ("DTPA"), unreasonable collection efforts, and defamation.[1] Plaintiffs' Original Petition and Request for Disclosure ("Petition") ¶¶ 19-39, *attached to* Defendants' Notice of Removal ("Removal") *as* Exhibit A.1 (docket entry 1). Wigginton seeks actual and punitive damages and an accounting on her loan. *Id.* ¶¶ 41-42. She also requests a judgment declaring that she has not breached the deed of trust and the defendants have no legal authority to foreclose on her home. *Id.* ¶ 40.

On April 25, 2007, Wigginton executed a home equity promissory note (the "note") payable to Countrywide Home Loans, Inc. ("Countrywide"), *id.* ¶ 11, and a deed of trust (the "deed of trust") identifying MERS as the beneficiary and Countrywide's nominee. *Id.* ¶ 12. On October 3, 2008, BAC, acting as the loan servicer, sent Wigginton a notice of default and intent to accelerate (a "default notice"), *id.* ¶ 15, indicating that Wigginton was two months in arrears on her

---

[1] The petition also alleges wrongful attempted foreclosure, *see* Petition ¶ 26, but Wigginton has abandoned that claim. *See* Plaintiff's Response and Brief in Opposition to Defendants' Motion to Dismiss, or in the Alternative, Motion for More Definite Statement ("Response") ¶ 7 (docket entry 7).

mortgage. *Id.* On January 6, 2010, BAC sent Wigginton a second default notice. See *id.* ¶ 16.

On March 3, 2010, MERS assigned its interest and purportedly transferred the note to Mellon. *Id.* ¶ 13. Two weeks later, Wigginton received a standard adjustable rate mortgage notice (the "rate notice") from Bank of America Home Loans, reporting a mortgage rate adjustment to be effectuated on May 1, 2010. *Id.* ¶ 17. On August 18, 2010, however, Mellon filed an application for an order of foreclosure. *Id.* ¶ 14. Wigginton does not allege that she was not in default when the foreclosure application was filed. See generally *id.*; *see also* Defendants' Motion to Dismiss and, in the Alternative, Motion for More Definite Statement and Brief in Support ("Defendants' Motion") at 6 (docket entry 3); Defendants' Reply in Support of Motion to Dismiss and, in the Alternative, Motion for More Definite Statement ("Defendants' Reply") at 6-7 (docket entry 7).

On September 24, 2010, Wigginton commenced this action in state court. *See* Petition. The defendants timely removed the case to federal court on the basis of diversity jurisdiction, Removal ¶¶ 2-3, 5, and subsequently counterclaimed for breach of contract and money had and received. Defendants' Original Counterclaims ¶¶ 25-36, 41 (docket entry 15). The defendants request damages and a judgment declaring that they are entitled to proceed with the foreclosure in light of Wigginton's uncured

breach.  *Id.* ¶ 41.  At issue here is the defendants motion to dismiss all of Wigginton's

claims.  Defendants' Motion at 1-2.

## II.  ANALYSIS

### A.  Rule 12(b)(6) Standard

"To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead

'enough facts to state a claim to relief that is plausible on its face.'"  *In re Katrina*

*Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atlantic*

*Corporation v. Twombly*, 550 U.S. 544, 570 (2007)), *cert. denied*, 552 U.S. 1182

(2008).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not

need detailed factual allegations, a plaintiff's obligation to provide the grounds of

[her] entitlement to relief requires more than labels and conclusions, and a formulaic

recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555

(citations, quotations marks, and brackets omitted).  "Factual allegations must be

enough to raise a right to relief above the speculative level, on the assumption that all

the allegations in the complaint are true (even if doubtful in fact)."  *Katrina Canal*,

495 F.3d at 205 (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks

omitted).  "The court accepts all well-pleaded facts as true, viewing them in the light

most favorable to the plaintiff."  *Id*. (quoting *Martin K. Eby Construction Company, Inc.*

*v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)) (internal quotation

marks omitted).

The Supreme Court has prescribed a "two-pronged approach" to determine whether a complaint fails to state a claim under Rule 12(b)(6). See *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1949-50 (2009). The court must "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 1950. The court should then assume the veracity of any well-pleaded allegations and "determine whether they plausibly give rise to an entitlement of relief." *Id.* The plausibility principle does not convert Rule 8(a)(2) notice pleading to a "probability requirement," but "a sheer possibility that a defendant has acted unlawfully" will not defeat a motion to dismiss. *Id.* at 1949. The plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not 'show[n]" -- 'that the pleader is entitled to relief.'" *Id.* at 1950 (quoting FED. R. CIV. P. 8(a)(2)). The court, drawing on its judicial experience and common sense, must undertake the "context-specific task" of determining whether the plaintiff's allegations "nudge" her claims against the defendants "across the line from conceivable to plausible." See *id.* at 1950, 1952.

1. *Wigginton's Breach of Contract, Unreasonable*
   *Collection Efforts, and Defamation Claims*

Wigginton asserts claims of breach of contract, unreasonable collection efforts, and defamation against the defendants based on her belief that the defendants lack legal authority to foreclose on her home. *See* Petition ¶¶ 21-26. According to Wigginton, the deed of trust did not give MERS authority to foreclose on the property, *id.* ¶ 13, so MERS' transfer of its interest to Mellon did not include a corollary right to foreclose.[2] *Id.* ¶¶ 20-21. Because Mellon has no standing to foreclose, Wigginton maintains, the defendants breached the deed of trust, engaged in unreasonable collection efforts, and defamed her credit by filing an application for an order of foreclosure. *Id.*

Under Texas law, if a deed of trust "expressly provides . . . the power of sale," then a party to that deed of trust has such authority. *Richardson v. CitiMortgage, Inc.*, No. 6:10CV119, 2010 WL 4818556, at *5 (E.D. Tex. Nov. 22, 2010) (citing *Athey v. MERS*, 314 S.W.3d 161, 166 (Tex. App.--Eastland 2010, *pet. denied*)); see also

---

[2]     Wigginton argues that this assignment caused the note and deed to split, rendering the loan wholly unenforceable, Petition ¶¶ 21-24, but she has not cited, and the court has not found, any authority to support this proposition. Contra *Broyles v. Chase Home Finance*, No. 3:10-CV-2256-G, 2011 WL 1428904, at *3 (N.D. Tex. Apr. 13, 2011) (Fish, J.) (explaining that the Texas Property Code "contemplates that someone other than the holder of the original note -- for example, a mortgage servicer who is not the mortgagee--may lawfully foreclose on the security interest. . . .").

*Santarose v. Aurora Bank FSB*, No. H-10-720, 2010 WL 2232819, at *5 (S.D. Tex.

June 2, 2010) (concluding that, "[b]y the plain language of the Deed of Trust, MERS

had the right to foreclose the property."). Here, the deed -- incorporated into

Wigginton's petition by reference, *Collins v. Morgan Stanley Dean Witter*, 224 F.3d

496, 498-99 (5th Cir. Tex. 2000), -- specifically states that "MERS . . . has the right

. . . to foreclose and sell the Property." Texas Home Equity Security Instrument

("Security Instrument") at 3, *attached to* Response *as* Exhibit A (docket entry 7-1).

Applying Texas law, courts in this circuit have consistently rejected claims

based on an allegedly wrongful or illegal foreclosure where the deed of trust

specifically grants the defendant a right to foreclose upon the plaintiff's default. *E.g.*,

*Richardson*, 2010 WL 4818556, at *5; *Santarose*, 2010 WL 2232819, at *5. Indeed,

in *Richardson*, the disputed deed of trust contained the exact same language as the

deed in the case *sub judice*. Compare *Richardson*, 2010 WL 4818556, at *5 ("MERS

. . . has the right . . . to foreclose and sell the Property."), with Security Instrument at

3 (same). There, the court dismissed the plaintiff's complaint because the deed

expressly gave the defendant -- ironically, MERS -- the right to foreclose on the

property. *Id.* at *5-6. The same result must obtain here.

Wigginton does not allege in her petition that she performed under the note

or deed. *See generally* Petition. She admits that MERS assigned its interest in the

deed to Mellon. *Id.* ¶ 13. And the deed of trust, on its face, grants MERS a right to

foreclose upon Wigginton's default, a right Mellon acquired vis-á-vis MERS' transfer of its interest. Security Instrument at 3. These facts, without more, cannot sustain Wigginton's claims for breach of contract, unreasonable collection efforts, and defamation.[3] Those claims are therefore dismissed.

### 2. *Wigginton's Anticipatory Breach, TDCA, and DTPA Claims*

Wigginton alleges that Mellon forfeited any right it had to foreclose on the property because the rate notice waived the two default notices by implying that the "loan was still on a monthly payment schedule." Petition ¶ 17. As a consequence, Wigginton avers, Mellon's conduct constituted an anticipatory breach of the deed, *id.* ¶ 26, and violated various provisions of the TDCA and the DTPA by "deceptively misle[ading] [her] to believe that her mortgage was now continuing on regular monthly installments, but instead post[ing] [her] property for foreclosure." *Id.* ¶ 31. The defendants counter that the rate notice is not a waiver, that Wigginton "does not allege this notice contains an express waiver," Defendants' Motion at 5, and that the rate notice contains an "express statement that its calculation of amount owed assumes the borrower is current on payments." *Id.* The defendants insist that Wigginton's anticipatory breach, TDCA, and DTPA claims should be dismissed

---

[3]     Because she has not alleged that the defendants intended to waive their right to foreclose, see *infra*, Wigginton also cannot rely on the theory of waiver to state plausible claims for breach of contract, unreasonable collection efforts, and defamation.

because the waiver theory on which they depend is meritless. See *id.* at 5-6, 9. The court agrees.

In Texas, "[t]he elements of waiver are: (1) an existing right, benefit, or advantage; (2) knowledge, actual or constructive, of its existence; and (3) an actual intent to relinquish the right (which can be inferred from conduct)." *G.H. Bass & Company v. Dalsan Properties--Abilene*, 885 S.W.2d 572, 577 (Tex. App.--Dallas 1994, no writ). "Waiver is largely a matter of intent," *Motor Vehicle Board of the Texas Department of Transportation v. El Paso Independent Automobile Dealers Association, Inc.*, 1 S.W.3d 108, 111 (Tex. 1999), but "[t]he law on waiver distinguishes between a showing of intent by actual renunciation and a showing of intent based on inference." *G.H. Bass & Company*, 885 S.W.2d at 577. Where waiver is based on inference, "it is the burden of the party who is to benefit by a showing of waiver to produce conclusive evidence that the opposite party 'unequivocally [sic] manifested' its intent to no longer assert its claim." *Id.* (quoting *Federal Deposit Insurance Corporation v. Attayi*, 745 S.W.2d 939, 947 (Tex. App.--Houston [1st Dist.] 1988, no writ)); see also *Motor Vehicle Board*, 1 S.W.3d at 111 ("[F]or implied waiver to be found through a party's actions, intent must be clearly demonstrated by the surrounding facts and circumstances.")

In the present case, Wigginton alleges that the rate notice is a waiver because it "indicates that Plaintiff's loan was still on a monthly payment schedule." Petition

¶ 17.  The rate notice does not expressly state that the defendants intended to waive

their right to foreclose, *see generally* Adjustable Rate Mortgage (ARM) Interest Rate

Adjustment Notice ("Rate Notice"), *attached to* Defendants' Motion *as* Exhibit B

(docket entry 3-2), so for her claims that are contingent on waiver to withstand the

present motion to dismiss, Wigginton must allege some facts that, if true, would allow

the court to reasonably infer that the defendants' "unequivocally manifested" an

intent to waive that right.  See *G.H. Bass & Company*, 885 S.W.2d at 577; *Iqbal*, 129

S. Ct. at 1949.  Wigginton, however, fails to allege any facts that go to the

defendants' intent; she simply states in a conclusory fashion that the rate notice is a

waiver.  Petition ¶¶ 17, 25.  As a consequence of this pleading deficiency, Wigginton's

claims predicated on waiver -- the anticipatory breach, TDCA, and DTPA claims --

are dismissed.

### 3.  *Wigginton's Accounting Claim*

Wigginton requests an order for an accounting of all transactions on her loan.

Petition ¶ 41.  Under Texas law, "[a]n action for accounting may be a suit in equity,

or it may be a particular remedy sought in conjunction with another cause of action."

*Michael v. Dyke*, 41 S.W.3d 746, 754 (Tex. App.--Corpus Christi 2001, no pet.).  The

trial court has discretion to order an accounting, *Southwest Livestock & Trucking*

*Company v. Dooley*, 884 S.W.2d 805, 809 (Tex. App.--San Antonio 1994, writ

denied), but should do so when "the facts and accounts in issue are so complex that

adequate relief cannot be obtained at law." *T.F.W. Management, Inc. v. Westwood*

*Shores Property Owners Association*, 79 S.W.3d 712, 717 (Tex. App.-- Houston [14th

Dist.] 2002, pet. denied). Wigginton has not alleged why the information she seeks

cannot be easily ascertained through discovery. See *id.* at 717-18 (accounting need

not be ordered "[w]hen a party can obtain adequate relief at law through the use of

standard discovery procedures. . . ."). Consequently, Wigginton's accounting claim is

dismissed.

### 4. *Wigginton's Request for Declaratory Judgment*

Because Wigginton has failed to plead any cognizable claim against any of the

defendants and the defendants' counterclaims are still pending, the court declines to

consider Wigginton's request for declaratory relief. The Declaratory Judgment Act

confers on federal courts unique and substantial discretion in deciding whether to

declare the rights of litigants. See *Rowan Companies, Inc. v. Griffin*, 876 F.2d 26, 28

(5th Cir. 1989) ("'[I]t is a matter for the district court's sound discretion whether to

decide a declaratory judgment action.'"). The Act gives federal courts competence to

declare rights, but it does not impose a duty to do so. See *Public Affairs Associates, Inc.*

*v. Rickover*, 369 U.S. 111, 112 (1962) (per curiam) ("[The] Act was an authorization,

not a command."). The core issues of this dispute -- whether either party failed to

perform under the note or deed, and whether Wigginton's uncured breach authorized

the defendants to foreclose on the property -- will be resolved by the defendants'

pending breach of contract action, so Wigginton's separate claim for declaratory relief is dismissed as redundant. See *Landscape Design and Construction, Inc. v. Transport Leasing/Contract, Inc.*, No. CIV.A. 3:00-CV-0906-D, 2002 WL 257573, at *10 (N.D. Tex. Feb. 19, 2002) (Fitzwater, J.) (dismissing declaratory judgment action that sought resolution of claims that were already basis of lawsuit).

### B. Leave to Amend

In her response to the defendants' motion to dismiss, Wigginton states that "should the Court find that one or more of Plaintiff's theories of recovery are insufficiently pled, Plaintiff requests leave to amend." Response ¶ 25. This request is not properly before the court because Wigginton has not complied with the local rules; Wigginton should have filed a motion with the proposed pleading attached as an exhibit. N.D. Tex. Loc. R. 7.1, 15.1. Should Wigginton elect to file a motion for leave to amend, the court will consider the merits of her request at that time.

### III. CONCLUSION

For the reasons stated above, the defendants' motion to dismiss the plaintiff's claims is **GRANTED** and the defendants' motion for more definite statement is **DENIED** as moot.

**SO ORDERED**.

July 7, 2011.

_A. Joe Fish_
**A. JOE FISH**
**Senior United States District Judge**